FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 27 2018

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Ken Joseph** | ) |
| *Plaintiff.* | ) |
| | ) Case No : _____ |
| vs | ) 1:18-cv-03443-AT-RGV |
| | ) |
| **EXPERIAN INFORMATION** | ) |
| **SOLUTIONS, INC.; TRANS UNION** | ) |
| **LLC; EQUIFAX, INC.; EQUIFAX** | ) |
| **INFORMATION SERVICES, LLC** | ) |
| *Defendants.* | ) |
| | ) |
| | ) **TRIAL BY JURY DEMANDED** |
| | ) |

## FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FCRA

### JURISDICTION

1. This court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C § 1331.

2. All conditions precedent to the bringing of this action have been performed.

### PARTIES

3. The Plaintiff in this lawsuit is Ken Joseph, a natural person, who resides in Gwinnett County, Georgia.

4. Defendant Experian Information Solutions, Inc. ("Experian") along with its subsidiaries, affiliates and partners operates as a Consumer Reporting Agency regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 *et seq.* and maintains corporate offices at 475 Anton Blvd., Costa Mesa, CA 92626.

5. Experian, its subsidiaries and partners sell consumer information and data derived from consumer information in its consumer file(s) in a number of products and services to

customers such as offering their "Collection Triggers℠"[1] service which operates on consumer data updated daily on an immense database of over 220 million consumers known as "File One℠ as just one example and generates hundreds of millions of dollars in revenue annually. Experian gathers massive amounts of consumer information on a daily basis as stated on their own web page[2] "Experian's U.S. ConsumerView marketing database covers over 300 million individuals and 126 million households. With the freshest data compiled from hundreds of public and proprietary sources, Experian has thousands of powerful data points to help marketers reach their targeting goals, including demographics, purchasing habits, lifestyles, interests and attitudes." Experian markets a product for businesses to target people for financial products using its financial data solutions stating: "Experian's Financial and Wealth Audiences suite of solutions can help you accurately target consumers for financial services offerings using wealth indicator audiences, developed through our exclusive partnership with First Manhattan Consulting Group (FMCG Direct)." on that same web page.

6. Defendant Equifax, Inc. ("Equifax") along with its subsidiaries *operates* as a Consumer Reporting Agency ("CRA") regulated by the Fair Credit Reporting Act, ("FCRA") 15 U.S.C. § 1681 *et seq.* with Equifax Inc. corporate offices at 1550 Peachtree Street, Atlanta, GA 30309.

7. Equifax, Inc. is the parent of Equifax Information Services, LLC ("EIS"). In prior litigation it has taken the position it is not itself a "consumer reporting agency" governed by the FCRA. See 15 U.S.C. § 1681a(f) ("The term "consumer reporting agency" means any person, who for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages

---

[1] http://www.experian.com/consumer-information/debt-collection.html (last visited 4-27-18)
[2] https://www.experian.com/marketing-services/targeting/data-driven-marketing.html (last visited 4-27-18)

in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.")

8. Equifax, Inc. *is* a consumer reporting agency. For purposes of the FCRA Equifax, Inc. has held itself out repeatedly to consumers, regulators and the public generally as the actual operating entity. Even the United States Congress recognizes Equifax, Inc. as a consumer reporting agency as evidenced by a recent letter to it from the Committee on Oversight and Government Reform. The branding, labels and disclosures on the Defendants' consumer website is dominated by "Equifax, Inc." titling[3]. Defendants have held Equifax, Inc. out as the operating and responsible entity but argue in litigation that EIS is the consumer reporting agency not Equifax, Inc. How a company factually operates is what matters under the FCRA not how it says it operates.

9. Equifax, Inc. and its subsidiaries such as Equifax Information Services LLC ("EIS") and Equifax Consumer Services, LLC (ECS) *operate* as alter egos of one another and freely transfer communications from consumers, as well as consumer information and data based on consumer information and communications, between the entities for commercial purposes without restriction and to treat them as separate entities would promote fraud and sanction injustice.

10. Equifax, Inc. and its subsidiaries including EIS *operate* using the same "Equifax" logo with no differentiation between entities when interacting with consumers via mail and otherwise. By virtue of different subsidiaries and divisions operating without any impediments of

---

[3] https://www.equifax.com/personal/ (last visited on 4-28-18)

corporate structure using the same logo as Equifax Inc. an unsophisticated consumer would not know one Equifax entity from another.

11. Equifax, Inc. has used EIS and ECS and other subsidiaries as dependent and integrated divisions rather than separate legal entities. The business operations are fully coordinated and shared resources are cross-applied without full and complete profit and cost centers. Management decisions at EIS and ECS as well as other divisions are made by and through Equifax, Inc. And the entities largely hold themselves out as a single uniform business entity exchanging and selling consumer information as well as data derived from consumer information and communications it holds in its consumer files. Its customer base is vast including state and federal governments generating hundreds of millions if not billions of dollars in revenue annually.

12. The FCRA, through a rule mandated at § 1681x expressly prohibits "a consumer reporting agency from circumventing or evading treatment as a nationwide consumer reporting agency" by means of corporate organization or restructuring.

13. Equifax, Inc. and its subsidiaries – whether or not they observe state law corporate formalities – have eliminated nearly all lines between their different business entities in the collection, maintenance, sharing and furnishing of consumer reporting information. Equifax, Inc. entities such as EIS regularly share FCRA restricted information with sibling ECS to market and profit from the sale of identity theft products including the blurring of legal lines between providing file information under the FCRA versus private sale to the consumer. It does so with a number of Equifax related entities such as TALX Corporation, eThority, Anakam, Inc. not to mention Equifax Mortgage Services.

14. To remain separate and distinct for purposes of liability in this action, Defendants Equifax, Inc. and Equifax Information Services, LLC *must operate* as separate and legally as well as operationally distinct entities. Here for matters alleged and relevant herein, EIS is merely an alter ego of Equifax, Inc. For purposes of how consumer data was handled, warehoused, used and sold the corporate lines were disregarded in practice. EIS, ECS and other subsidiaries of Equifax, Inc. are mere instrumentalities for the transaction of the corporate consumer credit business. Equifax, Inc., EIS, ECS and other subsidiaries share full unity of interest such that the separate personalities of the corporation and subsidiaries no longer exist as they operate as one consumer reporting agency under the FCRA.

15. Defendant Trans Union, LLC ("Trans Union") along with its subsidiaries and affiliates operates as a Consumer Reporting Agency regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 *et seq.* with corporate offices at 555 W. Adams Street Chicago, IL 60661. Trans Union operates as a single FCRA governed consumer reporting agency. Trans Union, LLC has structured itself in order to warehouse its sale of credit reporting consumer reports in one entity and its sale of criminal history, employment, landlord-tenant purposed, etc. consumer reports in other entities. However, it freely transfers data between units and operates without any impediments of corporate structure. In almost every material regard, the Trans Union units *operate* as if they are one and the same, a single consumer reporting agency.

## VENUE

16. The occurrences which give rise to this action occurred in Gwinnett County, Georgia and Plaintiff resides in Gwinnett County, Georgia.

17. Venue is proper in the Northern District of Georgia.

## GENERAL ALLEGATIONS

18. Plaintiff wanted to obtain his **full consumer file disclosure** to obtain all information recorded and maintained in Defendants' files and/or databases about him as 15 U.S.C. § 1681g(a)(1) states he is entitled to. Every consumer reporting agency shall, upon request, and subject to § 1681h(a)(1) of this title, clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request. 15 U.S.C. § 1681g(a)(1) Plaintiff looked at the annualcreditreport.com website which was set up and is operated by the Defendants but could find no place on that website where he could request his **full consumer file disclosure**. Instead, he found only where he could request a "credit report" which is NOT what he wanted or what § 1681g(a)(1) states he is entitled to upon request as a consumer. Plaintiff then decided to write to each of the Defendants directly and **made a very deliberate and specific request to obtain his full consumer file disclosure** which he is entitled to under 15 U.S.C. § 1681g(a)(1), **NOT** just a conventional credit report.

19. Plaintiff made a written request sent by certified mail for a copy of his **full consumer file disclosure** which was received by Experian on March 12, 2018. See Exhibit 1 attached.

20. In response to his very specific request for his **full consumer file disclosure** Plaintiff received a **dispute results letter** which was not responsive to his request.

21. Plaintiff made a written request sent by certified mail for a copy of his **full consumer file disclosure** which was received by Equifax on March 10, 2018 *See Exhibit 1 attached.*

22. In response to his very specific request for his **full consumer file disclosure** Plaintiff received **"Credit file, commonly refers to as a Consumer Credit Report",** which was not responsive to his request.

23. Plaintiff made a written request sent by certified mail for a copy of his **full consumer file disclosure** which was received by Trans Union on March 11, 2018 *See Exhibit 1 attached.*

24. In response to his very specific request for his **full consumer file disclosure** Plaintiff received a **"Personal Credit Report"** which was not responsive to his request.

25. Plaintiff, in making the exact same request of each of the Defendants, specified in great details exactly what specific sections of the Fair Credit Reporting Act (FCRA) requires each Defendant to provide a **full consumer file disclosure** at least once every 12 months at no charge when a request is made by a consumer. *See Exhibit 1 attached.*

26. Plaintiff's request for a **full consumer file disclosure** from each Defendant was his first request for a **full consumer file disclosure** within 12 months and identification in the form of a legible copy of his social security card and current Georgia driver's license was attached to the request for identification and location purposes.

27. After receiving a response from each Defendant that did not comply with the request made, Plaintiff made a second and final written request for a **full consumer file disclosure** pursuant to the FCRA of each Defendant. *See Exhibit 2 attached.* A copy of the initial letter was sent with the second request for clarification along with identification in the form of a legible copy of Plaintiff's social security card and current Georgia driver's license for identification.

28. **At no time did Plaintiff make any request for a credit report/disclosure or credit file** from the Defendants but instead was very specific in requesting a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1) as outlined in the initial request. [Exhibit 1]

29. In response to Plaintiff's second request for a **full consumer file disclosure** to Experian he received **"Disputed Result",** which was not responsive to his request as required by 15 U.S.C. § 1681g(a)(1).

30. In response to Plaintiff's second request for a **full consumer file disclosure** to Equifax he received **"Credit file, commonly called a Consumer Credit Report"** which was not responsive to his request as required by 15 U.S.C. § 1681g(a)(1).

31. In response to Plaintiff's second request for a **full consumer file disclosure** to Trans Union he received a **"TransUnion Personal Credit Report"** which was not responsive to his request as required by 15 U.S.C. § 1681g(a)(1).

32. All documents provided to Defendants in relation to identity and location information were in clearly legible form and in compliance with 15 U.S.C. § 1681h.

33. 15 U.S.C. § 1681g(a)(1) requires that ALL information in the possession of a CRA at the time of a consumer's proper request be disclosed in response to that request. Nowhere in §1681g does the statute limit that information to the scope of credit or credit related data which may be included in a conventional credit report. The statute clearly states ALL information regardless of its nature must be provided other than clearly ancillary information excluded by §1681g(1)(B) which Plaintiff clearly did NOT request.

34. In each case with each Defendant there was only communication in the form of letters requesting Plaintiff's **full consumer file disclosure** and response(s) by each Defendant with no other party involved in the communications between the parties other than the United States Postal Service (USPS) which transported documents between the parties.

35. Plaintiff was well aware of the recent hack of the Equifax database and had reason to believe that more information than he had ever received in a conventional credit report in the past

had been stolen just from the massive publicity surrounding the hack and his study of the consumer protection statutes including the FCRA. He had been studying the FCRA prior to the hack and already realized there was substantial information that companies like Equifax, Experian and Trans Union had in their file(s) about consumers than had been included in a conventional credit report he had received previously. Plaintiff had no direct knowledge of specific information regarding himself that might be in Defendants' file(s). That information, if it existed, could only be obtained through requesting a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1) rather than asking for a conventional credit report as he had in the past either through annualcreditreport.com or directly from the Defendants.

36. Plaintiff did NOT request a credit report, credit disclosure, or anything else using the words "credit" or "report" in any manner from any Defendant at any time related to this lawsuit but instead made a request for his **full consumer file disclosure** and nothing else. Every consumer reporting agency shall, upon request, and subject to § 1681h(a)(1) of this title, clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request. 15 U.S.C. § 1681g(a)(1)

37. Upon information and belief there is substantial information relating to the Plaintiff that is contained in all Defendants' files that has not been disclosed to him including, but not limited to, information that was previously shown in his credit reports that is now archived and additional information that is provided to prospective creditors, insurers or employers who request information on Plaintiff that he has never seen or has been made aware of.

38. Upon information and belief the information that is not disclosed to Plaintiff may contain negative codes or erroneous account information, among other things, that is provided to

prospective creditors, insurers or employers which directly affect how that prospective creditor, insurer or employer would view the Plaintiff in terms of granting credit, rating insurance policies or providing employment or even providing housing.

39. This undisclosed information has never been provided to Plaintiff even when it was requested so he could examine it for accuracy and dispute it if necessary. It could be blatantly false or at the least misleading and without disclosure by the Defendants Plaintiff would not have the opportunity to dispute the accuracy or veracity of the information in Defendants' files which he is legally entitled to do under the FCRA. Disclosure of false or misleading information to prospective creditors, insurers or employers that Plaintiff knows nothing about could paint him in a false light where he could be denied credit, housing, employment or pay higher interest rates on credit if it was granted and higher premiums for insurance harming him substantially.

40. For example, none of plaintiff's mortgage detail information or items he previously disputed was included in the so called "Full file disclosure" sent to plaintiff. These information was included in the pass. It is obvious that it has been archived and will probably be made available for a third party to view upon request.

41. Plaintiff made similar request to Lexis Nexis. On March 30th, 2018, He received an inch-thick document with his "Full File Disclosure" and was labeled as such. It states *"Thank you for contacting LexisNexis to obtain your Full File Disclosure. We providing this information pursuant to Section 609 of the Fair Credit Reporting Act. LexisNexis only provides consumer reports to customers that have a permissible purpose to access your information. Because this information can be provided through different products, we are disclosing the*

*data to you under several different reports, which are described below. If we do not have information for a particular report, we will notify you that no information was found. LexisNexis takes great pride in being a leading provider of reliable risk management information. To help assure the continued quality of our data, please carefully review the enclosed material and notify us of any dispute you may have".* see exhibit 3 attached.

42. Upon information and belief Defendants have far more information relating to Plaintiff in their file(s) and/or database(s) including archived information beyond that which Plaintiff has ever had access to or had the opportunity to review for accuracy and is provided to others when they make a request for consumer information related to him.  This information has been properly requested by Plaintiff multiple times and is required to be disclosed under 15 U.S.C. § 1681g(a)(1) when a proper request is made by a consumer.  Every consumer reporting agency shall, upon request, and subject to § 1681h(a)(1) of this title, clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request. 15 U.S.C. § 1681g(a)(1) The Defendants have **repeatedly refused** to provide Plaintiff with his **full consumer file disclosure** after multiple requests.  Plaintiff's requests were very specific in nature so as not to be misconstrued as a request for a credit report or credit disclosure by Defendants.

43. Plaintiff never made any request of Defendants that used the words "credit" or "report" in any manner or context but made a straightforward and very clear request **ONLY** for a **full consumer file disclosure** [Exhibits 1 and 2] to which he is entitled under 15 U.S.C. § 1681g(a)(1) and all Defendants failed to provide his **full consumer file disclosure** as required by the FCRA.

44. Plaintiff intend aggressively seek all information that have been archived in his **"Full file Disclosure"** during the discovery process.

45. Plaintiff was expecting to receive the extended version of his file (**Full file Disclosure**) which includes every inquiry including the promotional one and all information that has been suppressed (does not appear on the standard so called "credit report". Sometimes creditor may request certain information is not shared.

46. A Credit Report is used for the purpose of protecting Plaintiff's private information collected on his personal file. It is also used in part, to limit access of Plaintiff's information to only agencies that can demonstrate a permissible purpose for needing it. This limited information the Defendants in this case clearly is supplying Plaintiff with.

47. Plaintiff clearly is not making any claim regarding information that **HAS** been provided to a third party that he is aware of. The sole issue in this lawsuit revolves around the fact that he has not had access to ALL information in his **full consumer file** that may have been at some time in the past provided to an unknown third party or **MIGHT** be provided at some time in the future to a third party and he is entitled to have access to by law to review for accuracy.

48. Plaintiff made no requests for information such as credit scores, default dates, predictors or other ancillary information related to how the Defendants hold and/or manage the consumer information they have in their file(s) on individual consumers. The ONLY information requested by Plaintiff was a **full consumer file disclosure** of information *directly* related to him as a consumer that affects his credit worthiness, credit standing and credit capacity but also general reputation, personal characteristics, or mode of living among other things.

49. Because Plaintiff has not had access to that undisclosed information he has therefore had no opportunity to review it and dispute the accuracy of it if it is false, yet it is provided to

potential creditors, housing providers, insurers and employers without his knowledge and purposely and illegally concealed from him.

50. Upon information and belief when a report is provided by the Defendants to a potential creditor, insurer or employer that information is provided in an encrypted format with instructions to the user that the consumer is NOT to be shown that information. There is no prohibition in the law that information obtained by a user can be provided to the consumer if a request for it is made by the consumer yet instructions from the Defendants are to the contrary. Why?

51. One can only surmise that there must be some nefarious reason why that information should not be provided to the consumer that is sent to the user in an encrypted format with instructions to the user to conceal it from the consumer. A reasonable assumption would be that it contains information that the consumer has never seen and the consumer reporting agencies don't want the consumer to see for some unknown reason. This is obviously not in concert with the mandate of full disclosure clearly articulated in the FCRA in unambiguous plain language.

52. Plaintiff made multiple specific written requests of each of the Defendants for a **full consumer file disclosure** to which he is entitled as clearly stated in 15 U.S.C. § 1681g(a)(1) and all Defendants have failed to provide his **full consumer file disclosure** to Plaintiff and are therefore in violation of the FCRA.

53. The claims made in this lawsuit are in NO manner related to the data breach that occurred with Equifax. The claims herein are entirely focused on the very simple premise that all Defendants failed to provide a **full consumer file disclosure** of all information in their files

to Plaintiff upon his multiple requests as required by 15 U.S.C. § 1681g(a)(1). There is no relation of any claims made herein to any issues with the Equifax data breach.

54. The actions of all Defendants occurred within the past 2 years and are within the Statute of Limitations under the FCRA.

55. On June 14, 2018, Plaintiff sent a notice of pending Lawsuit to Defendant Experian as an effort to mitigate the damages via Certified mail# 7017 2400 0000 2754 3930 without any success.

56. On June 14, 2018, Plaintiff sent a notice of pending Lawsuit to Defendant Equifax as an effort to mitigate the damages via Certified mail# 7016 1970 0000 3746 9280 without any success.

57. On June 14, 2018, Plaintiff sent a notice of pending Lawsuit to Defendant TransUnion as an effort to mitigate the damages via Certified mail# 7016 1970 0000 3746 9297 without any success.

## COUNT I

### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANT EXPERIAN INFORMATION SOLUTIONS INC.

58. Paragraphs 1 through 57 are re-alleged as though fully set forth herein.

59. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

60. Experian operates as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

61. Experian repeatedly failed to comply with Plaintiff's multiple requests for a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1).

WHEREFORE, Plaintiff demands judgment for damages against Experian for statutory damages of $1000.00, any attorney's fees, and all costs pursuant to 15 U.S.C. § 1681n.

## COUNT II

### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANT TRANS UNION LLC

62. Paragraphs 1 through 57 are re-alleged as though fully set forth herein.

63. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

64. Trans Union operates as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

65. Trans Union repeatedly failed to comply with Plaintiff's multiple requests for a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1).

WHEREFORE, Plaintiff demands judgment for damages against Trans Union for statutory damages of $1000.00, any attorney's fees, and all costs pursuant to 15 U.S.C. § 1681n.

## COUNT III

### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANTS EQUIFAX, INC. AND EQUIFAX INFORMATION SERVICES, LLC

66. Paragraphs 1 through 52 are re-alleged as though fully set forth herein.

67. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

68. Equifax and its alter ego Equifax Information Services, LLC operate as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

69. Equifax and Equifax Information Services, LLC repeatedly failed to comply with Plaintiff's multiple requests for a full consumer file disclosure pursuant to 15 U.S.C. § 1681g(a)(1).

WHEREFORE, Plaintiff demands judgment for damages against Equifax, Inc. and Equifax Information Services, LLC for statutory damages of $1000.00, any attorney's fees, and all costs pursuant to 15 U.S.C. § 1681n.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Respectfully Submitted,

_____
Ken Joseph
596 Middleton place
Grayson, GA 30017
443-831-8884